IRVING, J.,
for the Court.
¶ 1. Edna Earl Graham was convicted by a Neshoba County jury of two counts of sale of a controlled substance, one count for Clonazapam and one for Hydrocodone. The Neshoba County Circuit Court sentenced Graham to ten years in the custody of the Mississippi Department of Corrections on each count, with each ten-year sentence to run consecutively, for a total of twenty years. The court also suspended four years of the sentence, leaving Graham with sixteen years to serve. Aggrieved, Graham appeals and asserts that the court erred in allowing the State to make a substantive amendment to her indictment without the authorization of a grand jury, and in denying proposed jury instruction D-7.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On February 4, 2004, Graham sold Hydrocodone and Clonazapam to Gary Henry, an undercover narcotics agent. According to Henry’s testimony, he called on February 2, 2004, and spoke with Roy Graham, Edna Graham’s son, about what drugs he had for purchase. Henry testified that Edna Graham could be heard in the background stating the drugs she had available. Henry then established a time on February 4, 2004, to come and pick up the drugs from the Grahams. On February 4, at the appointed time, Henry and another undercover narcotics agent, Jimmy Nichols, went to Edna Graham’s house. Once at the house they met Edna Graham, who told them that she had the pills to sell. Graham then asked the agents if they were with the DEA before selling the pills to them. After selling the pills to the agents, Graham again asked if the agents were with the DEA, to which they again responded that they were not. Henry testified that Graham was not arrested at that time, because of an ongoing sting operation, but was arrested later on February 25, 2004.
¶ 4. The indictment charging Graham with sale of Hydrocodone identified the Hydrocodone as a Schedule II controlled substance. However, Brandi Goodman, an analyst at the Mississippi Crime Laboratory, testified that when she tested the Hy-drocodone, she discovered that it was Hy-drocodone mixed with ibuprofen, which changed the drug’s schedule from a Schedule II controlled substance to a Schedule III controlled substance. During Goodman’s cross-examination, the jury was excused so that a discussion of an objection could be had out of the jury’s presence. At that time, the State also moved to amend Count II of the indictment to reflect that the mixed Hydrocodone is a Schedule III controlled substance and not a Schedule II controlled substance.
¶5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Amendment of the Indictment

¶ 6. In this contention of error, Graham contends that the court erred in allowing the State to amend the indictment to reflect that the drug sold by Graham is a Schedule III controlled substance and not a Schedule II controlled substance.
¶ 7. We note first that this issue is procedurally barred, because it was not raised in any form below. When the State proposed to amend the indictment, the court asked for a response from Graham’s attorney, who stated, “None.” The amendment of the indictment was also not raised as an issue in Graham’s motion for a new trial. Failure to raise an issue at trial *1121 procedurally bars a defendant from raising that issue on appeal: “A trial judge cannot be put in error on a matter which was not presented to him for decision.” Reynolds v. State, 913 So.2d 290, 299-300(¶ 37) (Miss.2005) (quoting Holland v. State, 587 So.2d 848, 868 n. 18 (Miss.1991)). Therefore, Graham is procedurally barred from raising the issue of the amendment as an issue on appeal.
¶ 8. Furthermore, even if this issue were not procedurally barred, there is no merit to it. Amendments to indictments should only be granted by a court during a trial if the amendment pertains to a matter of form and not substance. Mixon v. State, 921 So.2d 275, 280(¶ 15) (Miss.2005) (citations omitted). “An amendment is one of form if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment.” Jones v. State, 912 So.2d 973, 976(¶ 9) (Miss.2005) (citing Pool v. State, 764 So.2d 440, 443(¶ 10) (Miss.2000)). The defense is not prejudiced by the amendment so long as “the defense as it originally stood would be equally available after the amendment is made.” Id. (quoting Pool, 764 So.2d at 443(¶ 10)).
¶ 9. In the present case, we fail to see how Graham was prejudiced by the amendment of the indictment. Graham’s defense, as put forward at trial, was that she did not remember selling the pills and did not, in fact, sell the pills. This defense was changed in no way by the amendment to the indictment.
¶ 10. As support, Graham cites Copeland v. State, 423 So.2d 1333 (Miss.1982). In Copeland, a conviction was reversed where an indictment described the controlled substance as “methylenedioxy amphetamine,” when in reality the substance was “3, 4 methylenedioxy amphetamine.” Id. at 1336. This meant that the original indictment failed to charge a crime at all, since “methylenedioxy amphetamine” by itself is not a controlled substance. Id. The situation is markedly different in the case at bar. Hydrocodone is a controlled substance, whether alone or combined with ibuprofen. The only change that was made to the indictment was to change the number of the schedule that the substance is contained in. The original indictment was still a crime, and in fact was a crime of greater severity than the amended indictment. The only change that was made was to alter the wording to reflect that the substance is a Schedule III controlled substance as opposed to a Schedule II controlled substance and to remove some extraneous wording. Such a change is a change of form and not substance, and, therefore, the court did not err in allowing the State to amend the indictment.
¶ 11. Graham also contends that the amended indictment still failed to conform to the proof in the case because the amended indictment read that it was for Hydrocodone, without mentioning that the Hydrocodone was combined with another substance. Basically, the amendment failed to include that the Hydrocodone was a Schedule III substance because it had been mixed .with another substance, in this case ibuprofen. We find that this does not change the nature of the amendment from an amendment of form to an amendment of substance. Graham’s defense that she did not sell the pills was still equally intact after the amendment. Furthermore, the amendment served only to aid Graham, since the sale of a Schedule III substance is penalized less severely than the sale of a Schedule II substance. Miss.Code Ann. § 41-29-139(b) (Rev.2005).[1] Since the *1122 amendment reduced Graham’s potential sentence and had no prejudicial impact, we find that the amendment’s failure to specify that the Hydrocodone was mixed with another substance is mere harmless error at best and would not require reversal. This issue is without merit.

2. Jury Instructions

¶ 12. Graham also contends that the court erred in refusing proposed jury instruction D-7, which is an instruction regarding a defendant’s competency to testify on her own behalf. Proposed Instruction D-7 reads:
The Court instructs the Jury, that under the law, the Defendant is a competent witness in her own behalf, and that the Jury has no right to disbelieve her merely because she is a Defendant, and her testimony is entitled to such weight, faith, and credit as the Jury may think proper to give it.
¶ 13. The Mississippi Supreme Court held in Baker v. State, 391 So.2d 1010, 1012 (Miss.1980) that “defendants are not entitled to an instruction which informs the jury that the defendant is a competent witness in his own behalf.” Graham acknowledges this holding, but claims that the case is no longer good law because the statute referenced in the case was repealed in 1991. We note that Baker has continued to be cited as current law, even after the statute in question was repealed in 1991. See, e.g., Outlaw v. State, 797 So.2d 918, 921-22(¶ 17) (Miss.2001); Richardson v. State, 911 So.2d 1026, 1029(¶ 13) (Miss.Ct.App.2005). Therefore, current case law establishes that the rule that a defendant is not entitled to a jury instruction regarding his competence remains good law. The court did not err in refusing proposed instruction D-7.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION IN COUNT I OF SALE OF A SCHEDULE IV CONTROLLED SUBSTANCE (CLONAZA-PAM) AND CONVICTION IN COUNT II OF SALE OF SCHEDULE III CONTROLLED SUBSTANCE (HYDROCO-DONE) AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT I AND TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ON COUNT II, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. THE COURT’S SUSPENSION OF FOUR YEARS, LEAVING SIXTEEN YEARS TO SERVE, IS ALSO AFFIRMED. THE FOUR YEARS OF ORDERED PROBATION IS ALSO AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. Specifically, the maximum penalty for the sale of most Schedule II substances is thirty years in jail and a one million dollar fine. Miss.Code Ann. § 41 — 29—139(b)(1) (Rev. *1122 2005). The maximum penalty for the sale of a Schedule III substance is twenty years in jail and a two-hundred-and-fifty thousand dollar fine. Id. § 41 — 29—139(b)(4).